IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 13-cv-01913-LTB

COURTNEY CULBERTSON,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

      Plaintiff Courtney Culbertson appeals the final decision of the Commissioner of Social Security ("SSA") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* I have considered the parties' briefs [Docs. # 16, 17, 18] and the administrative record [Doc. # 13] ("AR"). Oral argument would not materially assist me in determining this appeal. Ms. Culbertson contends the administrative law judge's ("ALJ") evaluation of her residual functional capacity was not supported by substantial evidence with respect to her ability to reason and accept supervision. She also argues that the ALJ erred in refusing to order a consultative examination and in failing to discuss the credibility of her testimony. Finally, she argues that the ALJ's finding of employability at step five of SSA's process for determining whether a claimant is disabled is not supported by substantial evidence. I agree in all respects. Accordingly, I **REVERSE** SSA's decision and **REMAND** this case to SSA for further administrative proceedings consistent with this order.

## I.  Background

### A.      Procedural History

On March 29, 2011, Ms. Culbertson filed her SSI claim with SSA, alleging that she has

been disabled since at least November 1, 2010.  AR 23.  SSA denied her claim initially on June

17, 2011.  AR 70.  Ms. Culbertson requested a hearing, which took place on March 20, 2012

before an ALJ.  AR 86.  On March 29, 2012, the ALJ denied Ms. Culbertson's claim, concluding

that she was not disabled within the meaning of the Social Security Act.  AR 20.  Ms. Culbertson

requested that SSA's Appeals Council review the ALJ's decision.  On May 30, 2013, the

Appeals Council denied review, making the ALJ's decision the final decision of SSA.  AR 1;

*Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).  On July 18, 2013, Ms. Culbertson timely

filed the instant appeal.  I have jurisdiction pursuant to 42 U.S.C. § 405(g).

### B.      Ms. Culbertson's Alleged Disability

Unless otherwise noted, the following facts are undisputed.  Ms. Culbertson applied for

SSI benefits shortly after her eighteenth birthday.  AR 210.  Ms. Culbertson has pervasive

developmental disorder, autism spectrum disorder, and borderline intellectual functioning.  AR

25.  By all accounts, she has had these conditions since childhood.  Much of the administrative

record consists of educational records relating to her conditions.  Many of them long predate the

alleged onset date, but some do not.  Representative of more recent records is a May 19, 2011

"Summary of Performance" report that apparently was prepared by Ms. Culbertson's teacher in

anticipation of her graduation from high school.  AR 228.  The report indicates that Ms.

Culbertson is at an eighth grade reading level; that she is at a fifth grade level for math; that she

"struggles with writing lengthy assignments"; that she enjoys routine; and that she "is

overwhelmed easily and needs longer processing time." AR 228. Ms. Culbertson's teacher

noted that Ms. Culbertson had special education "para[professionals] sit with her one-on-one for

difficult tasks to aid in diminishing her anxiety and [aid] in reading and concepts." *Id.* The

report also notes that Ms. Culbertson "can follow a set of instructions" but "may need support

when working";"would have difficulty in a full time job"; "would need a lot of training and

support to maintain a job"; and "should explore online careers that can be self-paced." AR

229-30.

On April 29, 2010 (before filing her SSI claim), Ms. Culbertson was evaluated by

psychologist David Benson, Ph.D., "at the request of her vocational counselor in order to better

understand her abilities." AR 319-28. Dr. Benson wrote an extensive report of his observations

and conclusions. *Id.* Dr. Benson noted that Ms. Culbertson spoke loudly and with an odd

cadence; was impulsive, quick tempered, and impolite; "has some odd movements, such as

flapping her arms when she becomes excited"; tends to make careless mistakes; is forgetful and

unorganized; is easily distracted; and has difficulty focusing. *Id.* Dr. Benson administered the

Wechsler Adult Intelligence Scale, Third Edition (WAIS-III), which revealed a full scale

intelligence quotient (IQ) of 73. This score indicates borderline intellectual functioning and

abilities greater than or equal to four percent of the population. *Id.* Dr. Benson also

administered the Wide Range Achievement Test, Third Edition (WRAT3), which revealed

reading, spelling, and mathematical abilities at the sixth, fourth, and third grade levels,

respectively. *Id.*

Dr. Benson concluded that Ms. Culbertson "may face a low degree of employer

acceptance, due to such qualities as an odd presentation and demeanor and trouble formulating

realistic goals" and, therefore, "will certainly have difficulty finding her way to a line of work in which she could be self-supporting." AR 327. He noted that, given her difficulties concentrating, she would "find the normal routines and requirements of the work world or a repetitive job that doesn't stimulate her as intolerable." *Id.* He added that Ms. Culbertson "will require a work placement with an employer who understands her limitations and characteristics and is willing to work with them" and that [s]he is not able to compete in areas where the employer can't provide her with some accommodations, for example, because of her social characteristics and problems." AR 328. Dr. Benson suggested that she is best suited for "training that is hands-on and experiential and at her own pace." *Id.* Dr. Benson concluded that, "[d]espite her problems, she appears to be employable, especially because if she is interested in a task or a project that she is doing she is likely to have a strong investment in it." *Id.*

On May 24, 2011, state agency psychologist James Wanstrath, Ph.D., evaluated Ms. Culbertson's file but did not examine her. AR 330. He opined that she had "some autistic spectrum features, but not full autism, and also borderline IQ" and was capable of unskilled work with limited social interaction. *Id.* He completed a mental residual functional capacity assessment in which he indicated that Ms. Culbertson was "moderately limited" in her ability to maintain concentration for extended periods and to understand, remember, and carry out "detailed instructions." AR 66. He also indicated that she has "social interaction limitations," including moderate limitations in her abilities to accept instructions from supervisors; to respond appropriately to criticism from supervisors; to maintain socially appropriate behavior; and to adhere to basic standards of neatness and cleanliness. AR 67. Dr. Wanstrath summarized these findings by noting that Ms. Culbertson "can follow simple instructions, sustain ordinary routines

and make simple work related decisions" but "cannot work closely with the public, supervisors or coworkers." *Id.* He added that she "can accept supervision and relate to coworkers," but only "if contact is not frequent or prolonged." *Id.*

In the function report submitted with her application, Ms. Culbertson provided information about her limitations. AR 218. She wrote that she needed special reminders to "bursh my teeth, bath [sic]" and that she could not prepare meals for herself because doing so was "to hard and need help [sic]." AR 221. She noted that she did not handle stress or changes in routine well. AR 225. She wrote that she shopped for food and video games a "fews [sic] times a month" and that her interests included video games, drawing, and writing. AR 222-23. She noted problems getting along with family, friends, neighbors, or others due to "shyness," although she indicated she was able to get along "OK" with authority figures. AR 224-25. She also indicated having trouble concentrating and completing tasks. AR 224. In addition, she noted that she was scared to drive and to go outside of the house alone and that she needs someone to accompany her any time she goes places. AR 222-23.

At the hearing before the ALJ, held on March 20, 2012, vocational expert ("VE") Doris Shriver, Ms. Culbertson, and Ms. Culbertson's father, Brian Culbertson, testified. At the outset, the ALJ noted he did not "have a whole lot to go on in this case" and questioned "[w]hat on earth justifies us being here trying to figure this out with that amount of evidence." AR 39. In response, Ms. Culbertson's counsel asked that a consultative examination be performed on Ms. Culbertson. The ALJ declined this request in light of the examination performed by Dr. Benson before Ms. Culbertson filed her claim. AR 41.

The VE proceeded to testify in response to hypothetical situations posed by the ALJ. She

first testified that a worker who is required to work "in a supervised environment" and who has

general educational development ("GED") levels of one in reasoning, one in math, and one in

language could work in a single job: agricultural produce sorter.  AR 42-43.  The VE then

testified that three other jobs fitting those GED levels but with less supervision existed: farm

worker, housekeeping cleaner, and vine pruner.  AR 43-44.  Specifically, she noted that they

"tend to be more on their own instead of working with other people," do not "provide [the]

supervisory support that you are talking about," and provide only "occasional supervision."  *Id.*

Finally, the ALJ then asked the VE if "a greater availability of jobs" would result if the

hypothetical individual had a GED reasoning level of two, but still had math and language levels

of one (and, presumably, still required only occasional supervision).  AR 44.  She listed three

jobs: cafeteria attendant, cook's helper, and kitchen helper/dishwasher, and noted these jobs

were only representative of the jobs available to such an individual.  AR 44-45.

   Ms. Culbertson then testified.  She testified that she "[u]sually tend keep around to

myself [sic]" rather than liking to be around others.  AR 46.  She sweeps the floors to help out

around her parents' house, where she lives, but has to be told to do this task.  AR 48.  Indeed, she

does not do any chores without supervision.  AR 51.  She must be reminded to take a shower and

usually does not shower "til one of the parents yell at me."  AR 49.  She has a hard time doing

activities that she does not enjoy.  *Id.*  She has learned how to cook Ramen noodles for herself.

AR 48.  She does not have any friends who visit her at home.  AR 50.

   Finally, Mr. Culbertson testified.  He testified that Ms. Culbertson "hasn't developed like

a normal 19-year-old would have"; that she "doesn't have many friends,"; and that she "doesn't

go to the mall, talk on the telephone, text message, normal things that [a] 19-year-old child

would do." AR 54.  He and his wife cannot have complex conversations with her and have to

"keep things at a minimum" and "simplify basically things that we're trying to tell her."  AR

54-55.  Her daily routine consists of "jump[ing] around the house," playing her iPod, drawing,

reading, playing video games, and using the computer.  AR 56.  She does not do things when

asked by her parents; rather, they "have to constantly be on her" to do things like put away

dishes and take a shower.  AR 56-57.  Mr. Culbertson noted that she has "trouble with

concentration" and noted that if "it's boring to her intellectually, then she's not going to do it."

AR 57-58.

## II.  Legal Standards

### A.     SSA's Five-Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is "disabled" under Title XVI of the Social Security Act if she is unable to

"engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  SSA has established the

following five-step sequential evaluation process for determining whether a claimant is disabled

and thus entitled to benefits.  *See* 20 C.F.R. § 416.920.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful

activity."  *Id.* § 416.920(b).  If she is, benefits are denied and the inquiry stops.  *Id.*  At step two,

SSA asks whether the claimant has a "severe impairment," or one that "significantly limits [her]

physical or mental ability to do basic work activities."  *Id.* § 416.920(c).  If she does not, benefits

are denied and the inquiry stops.  *Id.*  If she does, SSA moves on to step three, where it

determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled regardless of the claimant's age, education, or work experience. *Id.* § 416.920(d).  If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC"), *i.e.,* what she is still able to do despite her impairments, and asks whether the claimant can do any of her "past relevant work" given that RFC. *Id.* § 416.920(e).  If not, SSA goes to the fifth and final step, where SSA has the burden of showing that the claimant's RFC allows her to do other work in the national economy in view of her age, education, and work experience. *Id.* § 416.920(g). At this step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience.  20 C.F.R. § 416.969.  In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal,* 331 F.3d at 760.

**B.      Standard for Reviewing SSA's Decision**

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom.  If they are so supported, they

are conclusive upon [this] court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The record must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).

### III. The ALJ's Decision

The ALJ followed the five-step analysis outlined above. At step one, the ALJ found that Ms. Culbertson has not engaged in substantial gainful activity since her application date of March 29, 2011. AR 25. At step two, the ALJ found that Ms. Culbertson has the severe impairments of pervasive developmental disorder, autism spectrum disorder, and borderline intellectual functioning. *Id.* At step three, the ALJ concluded that Ms. Culbertson does not meet or equal any listed impairment. AR 25-26. At step four, the ALJ assessed Ms. Culbertson's RFC and determined that she has no exertional limitations but has certain non-exertional limitations: she is limited to "simple, unskilled tasks"; she has GED levels of two in reasoning, one in language, and one in math; and she "should work in a supervised environment." AR 27-29. The ALJ noted that she has no past relevant work and therefore proceeded to step five. AR 29-30. At step five, the ALJ concluded that Ms. Culberton's age, education, work

experience, and RFC enabled her to perform jobs that exist in significant numbers in the national economy.  AR 30-31.  The ALJ cited the VE's testimony that someone with Ms. Culbertson's GED levels could perform the jobs of cafeteria worker, cook's helper, and kitchen helper/dishwasher.  *Id.*  The ALJ did not include any discussion of the amount of supervision associated with these jobs.  Based on these conclusions, the ALJ determined that Ms. Culbertson is not disabled.  AR 31.

## IV.  Analysis

### A.    The ALJ Erred in Determining Ms. Culbertson's Ability to Reason and Required Level of Supervision

In evaluating Ms. Culbertson's RFC at step four, the ALJ concluded that she has a GED reasoning level of two.  AR 28.  As he noted, the *Dictionary of Occupational Titles* ("DOT") provides that someone with a GED reasoning level of two can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  *Id.* (quoting DOT, App. C).  In support of his conclusion, the ALJ noted that Ms. Culbertson "has displayed the ability to perform some reasoning that is above the rudimentary level," noting that she "is able to complete an IQ test, complete forms in connection with her application, play video games, and make dolls."  AR 28.  He also noted that she "responded appropriately to questions during the hearing, and appears to have done so during her testing with Dr. Benson."  *Id.*

Dr. Benson, however, opined that Ms. Culbertson "has difficulty with . . . commonsense reasoning."  AR 325.  He assigned Ms. Culbertson an IQ of 74, in the fourth percentile of the population.  AR 321.  In addition, Dr. Wanstrath opined that Ms. Culbertson has the ability to follow only "simple instructions" and make only "simple work related decisions."  AR 67.  The ALJ did not acknowledge these opinions in his analysis of Ms. Culberton's reasoning abilities.

AR 29.

The ALJ's conclusion—that Ms. Culbertson's reasoning abilities are such that she can use "commonsense understanding" to follow "detailed" instructions—is directly contrary to these uncontroverted psychological opinions, one of which is from an examining provider.  They say exactly the opposite: that Ms. Culbertson has trouble with commonsense reasoning and is only capable of following simple instructions.  It was error for the ALJ to disregard these opinions and rely, without explanation, on his own observations and beliefs about Ms. Culbertson's reasoning abilities.  *See Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician."); *Winfrey*, 92 F.3d at 1023 (concluding that "the ALJ erred in rejecting [treating psychologist's] opinions without adequate justification and in substituting his own medical judgment for that of mental health professionals").

The ALJ similarly erred with respect to his conclusions about Ms. Culbertson's required level of supervision.  Dr. Wanstrath opined that Ms. Culbertson "can accept supervision and relate to coworkers if contact is not frequent or prolonged."  AR 67.  He added that Ms. Culbertson has social interaction limitations and that she is not significantly limited in her ability to "sustain an ordinary routine without special supervision."  AR 66-67.  By contrast, the ALJ concluded that Ms. Culbertson "should work in a supervised environment" and be supervised "on a somewhat consistent basis"  AR 27-28.  The ALJ explained that such supervision would "correct and limit her social interactions, and thus subsum[e] any limitations on interaction with co-workers, supervisors, or the public."  AR 28.  The ALJ cited no medical evidence for his

conclusion that supervision would "subsume" Ms. Culbertson's problems with social interaction. He also did not reconcile this conclusion with Dr. Wanstrath's conclusions that Ms. Culbertson can accept supervision only if contact is not frequent or prolonged and that she does not require special supervision in order to sustain an ordinary routine. Therefore, the ALJ's conclusion that Ms. Culbertson must work in a supervised environment and requires supervision on a somewhat consistent basis is not supported by substantial evidence.

**B.      The ALJ Erred in Declining to Order a Consultative Examination**

"[I]t is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (internal citations omitted). The same is true "where additional tests are required to explain a diagnosis already contained in the record." *Id.* At the hearing, the ALJ acknowledged that he did not "have a whole lot to go on in this case" and asked counsel "[w]hat on earth justifies us being here trying to figure this out with that amount of evidence." AR 39. Yet he denied the request of Ms. Culbertson's counsel for a consultative examination on the grounds that Dr. Benson had already provided opinions and it was improper to "go out and get more opinions until we find one that you like." AR 41. In his written opinion, however, the ALJ gave only "moderate" weight to Dr. Benson's report, noting that his opinions are "not clearly articulated at all." AR 29. He rejected "much of the opinion" as "speculative," including with respect to "problems the claimant may experience in the workforce." *Id.* At the same time, he credited what he described as Dr. Benson's "ultimate opinion—that the claimant is employable in some capacity." *Id.*

12

Under these circumstances, the evidence is at best inconclusive and the ALJ should have ordered a consultative examination. *Hawkins*, 113 F.3d at 1166. The ALJ acknowledged the paucity of relevant evidence in this case. In addition, he ultimately disregarded a substantial portion of Dr. Benson's opinions even though Dr. Benson is the only medical source to have examined Ms. Culbertson. And while the ALJ gave "great weight" to the opinions of Dr. Wanstrath, AR 29, Dr. Wanstrath did not examine Ms. Culbertson. Rather, his conclusions were based on educational records—many of which are dated years prior to Ms. Culbertson's alleged onset date and application date—and Dr. Benson's examination. It bears noting that Ms. Culbertson was 17 years old at the time of Dr. Benson's examination; she is now 22 years old. Her condition may have changed in the interim, providing additional grounds for a consultative examination at this juncture. *See, e.g., Duncan v. Astrue,* No. 09-CV-4462 KAM, 2011 WL 1748549, at *27 (E.D.N.Y. May 6, 2011) (recommending, "[g]iven the passage of time," that ALJ "[i]nquire upon plaintiff's current medical condition as it relates to plaintiff's SSI and SSD applications").

## C.    The ALJ Erred in Failing to Discuss Ms. Culbertson's Credibility

The ALJ's decision includes boilerplate language discounting Ms. Culbertson's credibility. *See* AR 27 (noting that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment"). Such language falls short of the standard for credibility assessments in the Tenth Circuit. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings") (citing *Huston v.*

*Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).  While it appears the ALJ addressed some areas where Ms. Culbertson's complaints are not supported by the evidence, such as with regard to her social limitations, *see* AR 28, he did not do so with respect to other areas.

For example, the ALJ noted that Ms. Culbertson's "alleged inability to work due to problems focusing, concentrating, [and] remembering" is not supported by the evidence.  AR 27.  But the ALJ did not evaluate the credibility of Ms. Culbertson's statements in this regard.  For example, Ms. Culbertson wrote in her function report that she has trouble concentrating, remembering, and completing tasks.  AR 224.  She also testified at the hearing that she has a "hard time doing activities that [she does not] enjoy" and that her parents have to yell at her before she will take a shower.  AR 49.  These statements are consistent with Dr. Benson's and Dr. Wanstrath's conclusion that Ms. Culbertson is impaired in her ability to concentrate.  *See* AR 327 (Dr. Benson concluding that because Ms. Culbertson is "easily distracted," she would "find the normal routines and requirements of the work world or a repetitive job that doesn't stimulate her as intolerable").  The ALJ should have evaluated the credibility of such statements.  The government argues in its brief that "[t]he testimony that Plaintiff had problems focusing and concentrating was inconsistent with her activities of playing video games and learning the new hobby of making dolls."  Resp. Br. at 17 [Doc. # 17].  Even if the ALJ could have relied on such reasoning despite treating medical opinion that appears to be to the contrary, the ALJ did not do provide such reasoning in his decision.  Accordingly, counsel's argument is an impermissible post-hoc rationale.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004).

**D.      The ALJ's Step Five Conclusion Was Not Supported by Substantial Evidence**

At step five, the ALJ concluded that Ms. Culbertson's RFC permitted her to perform the

jobs of cafeteria worker, cook's helper, and kitchen helper/dishwasher.  AR 30.  While the

hearing transcript is somewhat unclear, it appears the VE testified at the hearing that, among

other things, these jobs provide only occasional supervision.  AR 44-45.  But the ALJ's RFC

assessment provided that Ms. Culbertson "should work in a supervised environment" with

"supervis[ion] on a somewhat consistent basis."  AR 26-28.  Because the ALJ's step five

analysis relies on jobs that apparently provide only occasional supervision, his conclusion at step

five is not supported by substantial evidence on the current record.  I note that this issue may be

mooted if the ALJ determines on remand that Ms. Culbertson requires a different amount of

supervision.  *See supra* Sec. IV.A.

**E.**    **The ALJ's Errors Were Not Harmless**

SSA suggests that the ALJ's decision can be affirmed on harmless error grounds.  The

principle of harmless error applies in limited circumstances to Social Security appeals.  *See Allen*

*v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).  For example, a reviewing court may affirm

on harmless error grounds where, "based on the material the ALJ did at least consider (just not

properly), [the court] could confidently say that no reasonable administrative factfinder,

following the correct analysis, could have resolved the matter in any other way."  *Id.*  Here, the

ALJ's failure to order a consultative examination precludes affirmance on harmless error

grounds.  Because the examination did not take place, there is no way to know if the ALJ's

failure to order it was harmless.  Because this error alone precludes affirmance, I do not address

whether the other errors might have been harmless in isolation.

**F.**    **Further Administrative Proceedings**

Consistent with the above analysis and 42 U.S.C. § 405(g), I reverse the ALJ's decision

and remand this case to SSA for further administrative proceedings.  Specifically, in evaluating

Ms. Culbertson's RFC, the ALJ is directed to address Ms. Culbertson's reasoning abilities and

the amount of supervision she requires in light of the relevant psychological opinions.  The ALJ

is further directed to order a consultative examination of Ms. Culbertson and to fully address the

credibility of Ms. Culbertson's statements.  Finally, the ALJ shall account for Ms. Culbertson's

required level of supervision in determining at step five whether she is able to perform any jobs

that exist in significant numbers in the national economy.

### V.  Conclusion

For the foregoing reasons, it is hereby **ORDERED** that:

1.      SSA's decision is **REVERSED** and this case is **REMANDED** to SSA for further

administrative proceedings consistent with this order.

2.      Costs are awarded Ms. Culbertson.  Ms. Culbertson has requested attorney's fees under

the Equal Access to Justice Act, 28 U.S.C. § 2412(d), in her complaint and in her

briefing.  In view of that request, it is **ORDERED** that Ms. Culbertson shall file any

motion for attorney's fees by March 19, 2015.  The motion should address both the

grounds for her entitlement to fees and the amount of fees requested.  The government

shall file its response by April 2, 2015.


DATED: March __6__, 2015, at Denver, Colorado.


BY THE COURT:


     s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE

16